Evan J. Smith
BRODSKY SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone: 516.741.4977
Facsimile: 516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE ZAPO,<br><br>Plaintiff,<br><br>vs.<br><br>NORTONLIFELOCK INC., VINCENT PILETTE, FRANK E. DANGEARD, SUE BARSAMIAN, ERIC K. BRANDT, NORA DENZEL, PETER A. FELD, KENNETH Y. HAO, EMILY HEATH, and SHERRESE M. SMITH,<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, George Zapo ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1. Plaintiff brings this stockholder action against NortonLifeLock Inc. ("NortonLifeLock" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to merge the Company with Avast plc ("Parent" or "Avast") as a result

of an unfair process, and to enjoin an upcoming stockholder vote on a proposed stock issuance relating to the merger (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in an August 10, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Avast will be entitled to receive a combination of cash consideration and newly issued shares in NortonLifeLock with alternative consideration elections available, where, when completed, as a shareholder as the Company, the Plaintiff's interests will be significantly diluted. Avast shareholders, through entitlements and alternative considerations, can own up to 26% of the combined company.

3. Thereafter, on October 4, 2021, NortonLifeLock filed a Definitive Proxy Statement on Form DEFM14A (the "Definitive Proxy Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, the dubious nature of the stock issuance at the heart of the Proposed Transaction is laid bare considering the extreme dilutive effect that the Proposed Transaction will have on Plaintiff's Company stock.

5. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Definitive Proxy Statement on October 4, 2021 with the SEC in an effort to secure Plaintiff's vote in favor of the Proposed Transaction. The Definitive Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Definitive Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for

NortonLifeLock and Avast, provided by NortonLifeLock and Avast to the Board's financial advisors Evercore LLC ("Evercore") and Avast's financial advisors UBS AG London ("UBS") and J.P. Morgan Cazenove ("JPM"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Evercore, UBS, and/or JPM, if any, and provide to the Company and the Board.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7. Plaintiff is a citizen of Pennsylvania and, at all times relevant hereto, has been a NortonLifeLock stockholder. Defendant NortonLifeLock is a global leader in consumer Cyber Safety. NortonLifeLock is incorporated in Delaware and has its principal place of business at 60 E. Rio Salado Parkway, Suite 1000, Tempe, AX 85281. Shares of NortonLifeLock common stock are traded on the Nasdaq Stock Exchange under the symbol "NLOK".

8. Defendant Vincent Pilette ("Pilette") has been a Director of the Company at all relevant times. In addition, Pilette serves as the Company's Chief Executive Officer ("CEO") and President.

9. Defendant Frank E. Dangeard ("Dangeard") has been a director of the Company at all relevant times. In addition, Dangeard serves as the Company's Chairman of the Board.

10. Defendant Sue Barsamian ("Barsamian") has been a director of the Company at all relevant times.

11. Defendant Eric K. Brandt ("Brandt") has been a director of the Company at all relevant times.

12. Defendant Nora Denzel ("Denzel") has been a director of the Company at all relevant times.

13. Defendant Peter A. Feld ("Feld") has been a director of the Company at all relevant times.

14. Defendant Kenneth Y. Hao ("Hao") has been a director of the Company at all relevant times.

15. Defendant Emily Heath ("Heath") has been a director of the Company at all relevant times.

16. Defendant Sherrese M. Smith ("Smith") has been a director of the Company at all relevant times.

17. Defendants identified in ¶¶ 8 - 16 are collectively referred to as the "Individual Defendants."

18. Non-Party Avast is a global leader in digital security and privacy products with headquarters in Prague, Czech Republic. Shares of Avast common stock are traded on the London Stock Exchange under the symbol "AVST."

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

20. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the Nasdaq which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

***Company Background***

22. NortonLifeLock provides cyber safety solutions for consumers worldwide. The Company offers Norton 360, an integrated platform provides extensive cyber safety coverage and a subscription service providing protection for PCs, Macs, and mobile devices against malware, viruses, adware, ransomware, and other online threats on various platforms; and LifeLock identity theft protection solution that offers monitoring, alerts, and restoration services to its customers. The Company markets and sells its products and related services through retailers, telecom service providers, hardware original equipment manufacturers, and employee benefit providers, as well as e-commerce platform. It operates in the United States, Canada, Latin America, Europe, the Middle East, Africa, the Asia Pacific, and Japan. The Company was formerly known as Symantec Corporation and changed its name to NortonLifeLock Inc. in November 2019. NortonLifeLock was founded in 1982 and is headquartered in Tempe, Arizona.

23. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success. For example, in the July 27, 2021 press release announcing its 2022 Q1 financial results, the Company highlighted Revenue of $691 million, up 13%, Diluted EPS of $0.42, up 35%, as well as Full Year 2022 guidance of Revenue growth in the range of 8% to 10% year over year.

24. Speaking on the results, CEO Defendant Pilette said, "'Our Cyber Safety platform is designed to evolve to meet the needs of a consumer's digital life. This quarter reflects our strong execution and accelerating pace of innovation as we strengthen our foundation for long-term sustainable growth and bring our Cyber Safety offering to even more people.'" CFO Datalie Derse reiterated the Company's positive outlook, "'Our team continues to identify and unlock additional opportunities to accelerate our long-term growth, and we will continue to invest in product innovation, execute our international go-to-market strategy and improve our customer experience.

Once again we delivered on our commitments. In Q1 we accelerated revenue growth and profit, and we drove another consecutive quarter of increased customer count.'"

25. The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by NortonLifeLock. Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

26. Despite this upward trajectory, the Individual Defendants have caused NortonLifeLock to enter into the Proposed Transaction without providing requisite information to NortonLifeLock stockholders such as Plaintiff.

***The Flawed Sales Process***

27. As detailed in the Definitive Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company to by any means necessary irrespective of the price obtained.

28. Primarily, the Definitive Proxy Statement gives no adequate explanation for why the Board agreed to a transaction in which the public stockholders of the Company, including Plaintiff, would receive nothing other than the dilution of the value of their shares.

29. Notably the Definitive Proxy Statement also fails to provide any analyses created by UBS or JPM and provided to the Avast Board despite indicating that both had provided presentations advising the latter on the Proposed Transaction.

30. Moreover, while the Definitive Proxy Statement indicates that an ad hoc committee of Company Board members was created to aid in the sales process, it fails to provide sufficient information regarding whether the ad hoc committee's members were independent and disinterested and failed to provide specific information the ad hoc committee's powers, including if it had the power to select or veto any potential strategic alternative prior to review by the full Board.

31. In addition, the Definitive Proxy Statement is also unclear as to the nature of any non-disclosure agreement entered into between NortonLifeLock and any potentially interested third party, including Avast, as part of the sales process, and if the terms of any such agreements differed from one another, and in what way.

32. It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner

***The Proposed Transaction***

33. On August 10, 2021, NortonLifeLock and Avast issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **TEMPE, Ariz., and PRAGUE, Czech Republic and LONDON, U.K. – August 10, 2021** – NortonLifeLock (NASDAQ: NLOK), a global leader in consumer Cyber Safety, and Avast (LSE: AVST), a global leader in digital security and privacy, are pleased to announce that they have reached agreement on the terms of a recommended merger of Avast with NortonLifeLock, in the form of a recommended offer by NortonLifeLock, for the entire issued and to be issued ordinary share capital of Avast.
>
> Under the terms of the merger Avast shareholders will be entitled to receive a combination of cash consideration and newly issued shares in NortonLifeLock with alternative consideration elections available. Based on NortonLifeLock's closing share price of USD 27.20 on July 13, 2021 (being the last trading day for NortonLifeLock shares before market speculation began in relation to the merger on July 14, 2021, resulting in the commencement of the offer period), the merger values Avast's entire issued and to be issued ordinary share capital between approximately USD 8.1B and USD 8.6B, depending on Avast shareholders' elections.
>
> The boards of NortonLifeLock and Avast believe that the merger has compelling strategic and financial rationale and represents an attractive opportunity to create a new, industry-leading consumer Cyber Safety business, leveraging the established brands, technology and innovation of both groups to deliver substantial benefits to consumers, shareholders, and other stakeholders.
>
> "This transaction is a huge step forward for consumer Cyber Safety and will ultimately enable us to achieve our vision to protect and empower people to live their digital lives safely," said Vincent Pilette, Chief Executive Officer of NortonLifeLock. "With this combination, we can strengthen our Cyber Safety platform and make it available to more than 500 million users. We will also have the ability to further accelerate innovation to transform Cyber Safety."

"At a time when global cyber threats are growing, yet cyber safety penetration remains very low, together with NortonLifeLock, we will be able to accelerate our shared vision of providing holistic cyber protection for consumers around the globe," said Ondřej Vlček, Chief Executive Officer of Avast. "Our talented teams will have better opportunities to innovate and develop enhanced solutions and services, with improved capabilities from access to superior data insights. Through our well-established brands, greater geographic diversification and access to a larger global user base, the combined businesses will be poised to access the significant growth opportunity that exists worldwide."

Strategic and Financial Benefits

- Accelerates the transformation of consumer Cyber Safety with over 500 million users;
- Combines Avast's strength in privacy and NortonLifeLock's strength in identity, creating a broad and complementary product portfolio, beyond core security and towards adjacent trust-based solutions;
- Strengthens geographic diversification and facilitates expansion into the SOHO / VSB segments;
- Unlocks significant value creation through approximately USD 280 million of annual gross cost synergies1, with additional upside potential from new reinvestment capacity for innovation and growth;
- Brings together two strong and highly experienced consumer-focused management teams.

The Merger will also enhance the financial profile of the combined company through increased scale, long-term growth, cost synergies with reinvestment capacity and strong cash flow generation supported by a resilient balance sheet, and is expected to drive double-digit EPS accretion within the first full year following completion of the Merger and double-digit revenue growth in the long-term.

Organization and Management

Following the completion of the transaction, NortonLifeLock's CEO, Vincent Pilette, will remain CEO, NortonLifeLock's CFO, Natalie Derse, will remain CFO, and Avast's CEO, Ondřej Vlček, is expected to join NortonLifeLock as President and become a member of the NortonLifeLock Board of Directors. In addition, Pavel Baudiš, a co-founder and current director of Avast, is expected to join the NortonLifeLock Board as an independent director.

On completion of the merger, the combined company will be dual headquartered in Prague, Czech Republic, and Tempe, Arizona, USA, and will have a significant presence in the Czech Republic. The combined company will be listed on NASDAQ.

***The Materially Misleading and/or Incomplete Definitive Proxy Statement***

34. On October 4, 2021, the NortonLifeLock Board caused to be filed with the SEC a materially misleading and incomplete Definitive Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

35. Specifically, the Definitive Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Definitive Proxy Statement fails to disclose:

a. Adequate reasoning as to why the Board agreed to a transaction in which the public stockholders of the Company, including Plaintiff, would receive nothing other than to have their shares diluted in value;

b. Specific information regarding whether the members of the ad hoc committee were independent and disinterested;

c. Specific information regarding the powers of the ad hoc committee;

d. Whether the confidentiality agreements entered into by the Company with Avast differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties if any, and if so, in what way; and

e. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Avast, would fall away.

*Omissions and/or Material Misrepresentations Concerning NortonLifeLock's and Avast's Financial Projections*

36. The Definitive Proxy Statement fails to provide material information concerning financial projections for NortonLifeLock and Avast provided to and relied upon by Evercore, UBS, and JPM in their analyses. The Definitive Proxy Statement discloses financial projections for the Company which are materially misleading

37. The Definitive Proxy Statement should have, but fails to provide, certain information in the projections for NortonLifeLock and Avast that were provided to the Board, Evercore, UBS, and JPM. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

38. With regard to the NortonLifeLock Projections, the Definitive Proxy Statement fails to disclose material line items for the following metrics:

a. Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: net income before interest, income taxes, depreciation and amortization, adjusted to exclude stock-based compensation expense, loss (gain) on discontinued operations, loss (gain) on extinguishment of debt, fair value adjustment for contract liabilities, restructuring charges, acquisition-related costs, litigation settlement charges, loss (gain) on sale of properties, other non-operating expense (income) and other charges;

b. Adjusted Net Income, including all underlying necessary inputs and assumptions, including specifically: net income adjusted to exclude stock-based compensation expense, fair value adjustment for contract liabilities, amortization of intangible assets, restructuring charges, acquisition-related costs, litigation settlement charges, non-cash interest expense, loss (gain) or

divestitures and sale of equity method investments, loss (gain) on extinguishment of debt, loss (gain) on sale of properties, adjustment to provision for income taxes and income from discontinued operations (net); and

c. Adjusted Unlevered Free Cash Flow, including all underlying necessary inputs and assumptions, including specifically: stock-based compensation expense, taxes (incorporating the effect of the tax shield from D&A expenses) and capital expenditures, and adjusted for changes in net working capital.

39. With regard to the Avast Projections, the Definitive Proxy Statement fails to disclose material line items for the following metrics:

a. Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: operating profit/loss before depreciation, amortization of non-acquisition intangible assets, share-based payments including related employer's costs, exceptional items and amortization of acquisition intangible assets;

b. Adjusted Net Income, including all underlying necessary inputs and assumptions, including specifically: statutory net income (profit after tax) plus share-based payments, exceptional items, amortization of acquisition intangible assets, unrealized foreign exchange gain/loss on the EUR tranche of the bank loan, the tax impact from the unrealized exchange differences on intercompany loans, and the tax impact of the foregoing adjusting items and IP transfer, less gain on disposal of business operation; and

c. Adjusted Unlevered Free Cash Flow, including all underlying necessary inputs and assumptions, including specifically: stock-based compensation expense, taxes (incorporating the effect of the tax shield from D&A expenses) and capital expenditures, and adjusted for changes in net working capital

40. The Definitive Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in all projection sets.

41. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

42. Without accurate projection data presented in the Definitive Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Evercore, UBS, and/or JPM"s financial analyses or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Evercore, UBS, and JPM*

43. In the Definitive Proxy Statement, Evercore describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinion.

44. With respect to the *Selected Publicly Traded Companies Analyses*, the Definitive Proxy Statement fails to disclose the following:

a. The metrics for each of the selected companies;

b. For Avast:

i. The specific inputs and assumptions used to determine the utilized enterprise value/FY 2022E EBITDA multiple reference range of 11.5x to 14.5x to Avast's estimated FY 2022E EBITDA;

ii. The specific inputs and assumptions used to determine the utilized Price/Earnings multiple reference range of 14.5x to 18.5x to Avast's estimated FY 2022 net income;

iii. Avast's net debt;

iv. The number fully diluted shares of Avast outstanding.

c. For NortonLifeLock:

i. The specific inputs and assumptions used to determine the utilized enterprise value/2022E EBITDA multiple reference range of 11.5x to 14.5x to NortonLifeLock's estimated 2022E EBITDA;

ii. The specific inputs and assumptions used to determine the utilized Price/Earnings multiple reference range of 14.5x to 18.5x to NortonLifeLock's estimated 2022 net income;

iii. NortonLifeLock's net debt;

iv. The number fully diluted shares of NortonLifeLock outstanding.

45. With respect to the *Discounted Cash Flow Analysis* - Avast, the Definitive Proxy Statement fails to disclose the following:

a. The unadjusted standalone unlevered, after-tax free cash flows for Avast utilized;

b. Avast's terminal values calculated;

c. The specific inputs and assumptions used to determine the utilized range of perpetuity growth rates of 2.0% to 3.0%;

d. The specific inputs and assumptions used to determine the utilized range of implied terminal EBITDA multiples range of 10.8x to 15.2x;

e. The specific inputs and assumptions used to determine the discount rate range of 8.0% to 9.0%;

f. Avast's weighted average cost of capital;

g. Avast's net debt;

h. The number of fully diluted shares of Avast outstanding; and

i. The specific inputs and assumptions used to determine the perpetuity growth rate of 2.5% as applied to the estimated synergies.

46. With respect to the *Discounted Cash Flow Analysis* - NortonLifeLock, the Definitive Proxy Statement fails to disclose the following:

a. The unadjusted standalone unlevered, after-tax free cash flows for NortonLifeLock utilized;

b. NortonLifeLock's terminal values calculated;

c. The specific inputs and assumptions used to determine the utilized range of perpetuity growth rates of 2.0% to 3.0%;

d. The specific inputs and assumptions used to determine the utilized range of implied terminal EBITDA multiples range of 10.9x to 15.3x;

e. The specific inputs and assumptions used to determine the discount rate range of 8.0% to 9.0%;

f. NortonLifeLock's weighted average cost of capital;

g. NortonLifeLock's net debt; and

h. The number of fully diluted shares of NortonLifeLock outstanding.

47. With respect to the *Equity Research Analyst Price Targets*, the Definitive Proxy Statement fails to disclose the following:

a. The specific price targets utilized; and

b. The identity of the analysts and/or firms that created the utilized price targets.

48. With respect to the *Premiums Paid Analysis*, the Definitive Proxy Statement fails to disclose the following:

a. The specific inputs and assumptions used to determine the applied reference range of 30.0% to 50.0% as applied to the Avast unaffected share price as of July 14, 2021 of £5.04; and

b. The specific inputs and assumptions used to determine the applied reference range of 20.0% to 30.0% based on all-share takeover transactions with an average acquirer / target pro forma ownership of approximately 70% / 30%, to the Avast unaffected share price as of July 14, 2021 of £5.04.

49. In addition the Definitive Proxy Statement fails to provide any financial analyses whatsoever created by UBS or JPM despite the Definitive Proxy Statement explicitly indicating that they provided financial advisory services to Avast.

50. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

51. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public NortonLifeLock stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Definitive Proxy Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

52. Plaintiff repeats all previous allegations as if set forth in full herein.

53. Defendants have disseminated the Definitive Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

54. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

55. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

56. The Definitive Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Definitive Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

57. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

58. The Individual Defendants were at least negligent in filing a Definitive Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Definitive Proxy Statement not misleading.

59. The misrepresentations and omissions in the Definitive Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

60. Plaintiff repeats all previous allegations as if set forth in full herein.

61. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Definitive Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

62. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Definitive Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Definitive Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Definitive Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

63. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of NortonLifeLock's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Definitive Proxy Statement was misleading.

As a result, the Individual Defendants are responsible for the accuracy of the Definitive Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

64. The Individual Defendants acted as controlling persons of NortonLifeLock within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause NortonLifeLock to engage in the wrongful conduct complained of herein. The Individual Defendants controlled NortonLifeLock and all of its employees. As alleged above, NortonLifeLock is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Definitive Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: October 20, 2021

**BRODSKY SMITH**

By: ______________________

Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*